**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BIPINKUMAR NARIA,
Individually and on behalf of a similarly
situated class of individuals,

    Plaintiff,

v.

TROVER SOLUTIONS, INC.,
HEALTHCARE RECOVERIES, INC., and
HEALTHCARE RECOVERIES,
A division of Trover Solutions, Inc,

    Defendants.
                                  /

No. C 13-02086 WHA

**ORDER RE MOTION TO COMPEL ARBITRATION AND STAY**

## INTRODUCTION

In this putative class action, defendants move to compel arbitration and stay this action. For the following reasons, defendants' motion to compel arbitration and to stay is **GRANTED**.

## STATEMENT

This action concerns plaintiff Bipinkumar Naria's claim under California's Confidentiality of Medical Information Act ("CMIA"). Cal. Civ. Code § 56.20. Defendant Trover Solutions, Inc. is the parent corporation of defendants Healthcare Recoveries and Healthcare Recoveries, Inc., two companies that the complaint alleges are the same (Compl. ¶ 2).

In January 2008, plaintiff changed his health insurance to the Kaiser Foundation Health Plan, Inc. (Abad Decl. Exh. C). Upon plaintiff's enrollment, Kaiser provided him with a copy of its Individual Plan Membership Agreement and Disclosure Form and Evidence of Coverage for Kaiser Permanente for Individuals and Families (*id.* ¶ 4). The membership agreement includes an arbitration provision (*id.* Exh. A at 53–54):

**Scope of arbitration**

Any dispute shall be submitted to binding arbitration if all of the following requirements are met:

The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this Membership Agreement and Evidence of Coverage or a Member Party's relationship to Kaiser Foundation Health Plan, Inc. (Health Plan), including any claim for medical or hospital malpractice (a claim that medical services or items were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted

The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties . . . .

The membership agreement defines "Kaiser Permanente Parties" as including Kaiser and several related entities, as well as "[a]ny employee or agent of any of the foregoing" (*id.* at 54). Additionally, the agreement addresses Kaiser's privacy practices, referencing Kaiser's Notice of Privacy Practices for more detail (*id.* at 60.) Specifically, the notice explains the limited situations in which Kaiser may disclose patients' protected health information without their consent (Abad Decl. Exh. F at § V).

In November 2012, a third party injured plaintiff in a motor vehicle collision. Using his Kaiser health insurance, plaintiff received medical treatment for his injuries. To recover payment for that treatment, Kaiser contracted with defendant Healthcare Recoveries to obtain payment from the third party's insurance carrier.

Kaiser and Healthcare Recoveries' work agreement is set forth in their Statement of Work, which covers the scope of Healthcare Recoveries' duties, its status with Kaiser, and Kaiser's ability to terminate the agreement (Abad Reply Decl. Exh. A). Additionally, in June 2013, Kaiser issued a letter, stating that Kaiser obtained Healthcare Recoveries "to act as our agent regarding our other party liability recovery rights concerning Bipinkumar Naria" (Abad Decl. Exh. D). Kaiser did not indicate to whom it issued this letter.

To receive payment for plaintiff's medical treatment, Healthcare Recoveries provided the third party's insurance carrier with some of plaintiff's medical information (Compl. ¶ 9). On May 7, 2013, plaintiff commenced this action against defendants, alleging that they violated the

2

CMIA by disclosing his medical information. On June 16, 2012, defendants filed a motion to compel arbitration and stay this action.

## ANALYSIS

### 1. LEGAL STANDARD.

The Federal Arbitration Act governs defendants' motion to compel arbitration. Under the FAA, a district court determines (1) whether a valid agreement to arbitration exists, and if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the court finds that a valid arbitration agreement encompasses the dispute, the FAA requires the court to enforce the arbitration agreement. *Ibid.* "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (internal quotation marks omitted).

Defendants move to compel arbitration and stay the claims on the basis that the arbitration provision in the membership agreement mandates arbitration of this action. Plaintiff advances several arguments against arbitration, each of which is addressed in turn.

### 2. VALIDITY OF THE ARBITRATION PROVISION.

Plaintiff asserts that the arbitration provision is unenforceable because the provision is both procedurally and substantively unconscionable. *First*, as to procedural unconscionability, plaintiff claims that the membership agreement is a contract of adhesion that is lengthy and difficult to understand, leaving plaintiff no real choice or bargaining ability as to its terms. *Second*, plaintiff asserts that the arbitration provision is substantively unconscionable because the provision would not require defendants to arbitrate their disputes against plaintiff.

A district court looks to state law in determining whether a valid, enforceable arbitration agreement exists. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Here, the parties do not dispute that California provides the relevant state law. Accordingly, this order takes California law as controlling, as the parties have done.

Under California law, an arbitration agreement is unenforceable if the agreement is both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000). Whereas the procedural inquiry examines any "oppression or surprise due to unequal bargaining power" with the agreement, the substantive inquiry focuses on whether the agreement produces "overly harsh or one-sided results." *Ibid.* (internal quotation marks omitted). A contract of adhesion — *i.e.*, a standardized contract that is drafted by a party of superior bargaining strength and which relegates to the subscribing party only the opportunity to accept or reject the contract — is at least somewhat procedurally unconscionable under California law. *Ting v. AT & T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Furthermore, the validity of an agreement is judged on a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ibid.*

This order agrees that the membership agreement is a contract of adhesion, given that it is Kaiser's standardized contract for all enrolled health insurance members (Abad Decl. ¶ 4). Such a finding, however, only indicates that the agreement is at least somewhat procedurally unconscionable, not that the agreement is unenforceable. Here, the arbitration provision provides clear detail on the scope of arbitrable claims, the parties subject to arbitration, and the process by which one initiates arbitration (Abad. Decl. Exh. A). Plaintiff also changed his health insurance plan to that of Kaiser, directly following a written explanation of Kaiser's arbitration provision (Abad Decl. Exh. C). Of note, plaintiff does not contend that he was confused by this information or could not understand the details of the arbitration provision.

Furthermore, even if there is some procedural unconscionability, the order finds that the arbitration provision is not substantively unconscionable. The provision requires arbitration for all claims relating to the agreement, so long as the claim is asserted by a "Member Party" against a "Kaiser Permanente Party" or vice versa (Abad Decl. Exh. A at 53–54). The agreement defines "Kaiser Permanente Parties" as including "any employee or agent" of Kaiser or several

4

1  other entities (*id.* at 54).  As discussed below, defendants are agents of Kaiser, and therefore are
2  subject to the arbitration provision for claims against plaintiff.

3  Because the arbitration provision is not substantively unconscionable, and only
4  somewhat procedurally unconscionable at best, the provision is enforceable and valid.

### 3. SCOPE OF THE ARBITRATION PROVISION.

Plaintiff further argues that arbitration cannot be compelled because the arbitration provision does not encompass this dispute.  Specifically, he asserts that his claim does not "relat[e] to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted," one of the requirements for arbitration under the membership agreement (Abad Decl. Exh. A at 53–54).  Plaintiff reasons — under the doctrine of *ejusdem generis* — that the requirement only concerns Kaiser's provision of medical services, and not defendants' recovery of payment for such services.  As support, he cites *Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501 (1989), and *Mannick v. Kaiser Foundation Health Plan, Inc.*, C 03-5905 PJH, 2005 WL 3454134 (N.D. Cal. Dec. 16, 2005) (Judge Phyllis Hamilton).

Generally, a court decides whether parties agreed to arbitrate a specific dispute by examining, and to a lesser extent, construing the arbitration agreement.  *Mannick*, 2005 WL 3454134, *4.  The court applies ordinary state contract law in assessing whether the parties objectively intended to arbitrate a particular issue.  *Ibid.*

In California, a court determines whether an arbitration agreement encompasses a dispute by reading the contract as a whole.  *Ibid.*  The court evaluates the intent and scope of an arbitration agreement by looking to the usual and ordinary meaning of the contract's language, as well as the circumstances under which the contract was made.  *Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal.App.4th 1194, 1197–98 (1994).  An arbitration agreement does not apply to disputes unrelated to matters covered in the contract, even if the arbitration agreement is broadly drafted.  See *Lawrence*, 207 Cal.App.3d at 1506-07; *and* Cal. Civ. Code 1648.  Furthermore, under the doctrine of *ejusdem generis*, general words following the enumeration of particular classes of persons or things will be construed as applicable only to persons or things of the same general nature or class as those enumerated.  *Lawrence*, 207 Cal.App.3d at 1506.

5

Plaintiff's cited decisions are distinguishable from this action. In *Lawrence*, the court applied *ejusdem generis* in limiting an arbitration clause's meaning to disputes over financial matters, because the clause was but "one provision in an agreement devoted almost exclusively to financial matters similar to disputes regarding fees and costs." 207 Cal. App. 3d at 1506. In *Mannick*, the court found that the agreement containing the arbitration language was intended to disclose defendant's medical services, and thus bore no relation to the plaintiff's federal and state civil rights claims. 2005 WL 3454134, *5.

Here, the membership agreement, read as a whole, does focus on the provision of medical services under Kaiser's health insurance (Abad Decl. Exh. A). The agreement provides detailed information as to the type of medical services available, the participating health care providers, and the various costs for these services (*ibid.*). Importantly, the agreement also refers the reader — in bold typeface — to Kaiser's notice for additional information regarding patients' protected health information (*id.* at 60). This notice discusses situations in which Kaiser may disclose patients' protected health information without their consent, including how Kaiser may share such information in determining costs and collecting payment for health care (Abad Decl. Exh. F at § V). Of note, the notice addresses Kaiser's contracted "business associates," who may perform payment activities on Kaiser's behalf (*ibid.*).

The order finds that the arbitration provision encompasses claims concerning the provision of and payment for Kaiser's medical services, including claims relating to the disclosure of patients' medical information. Because this action stems from defendants' disclosure of medical information in obtaining payment for Kaiser's medical services, this dispute falls within the scope of the arbitration provision.

**4.    NONSIGNATORY PARTIES.**

Plaintiff argues that even if the arbitration provision encompasses his claim, defendants cannot compel arbitration because they were not signatories to the membership agreement.

Generally, only a party to an arbitration contract can enforce the terms of that contract, but there are limited situations in which a nonsignatory may compel a signatory to arbitrate. *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036–37 (2007). These situations include ones in

6

which the nonsignatory has a preexisting agency relationship with a party to the arbitration agreement that makes it equitable to impose the duty to arbitrate on either of them. *Ibid*; *HCC Life Ins. Co. v. Managed Ben. Adm'rs LLC*, 2:07-cv-02542-MCE-DAD, 2008 WL 2439658, *3 (E.D. Cal. June 12, 2008) (Judge Morrison England Jr.). In *HCC*, for example, the court considered a plaintiff's motion to compel arbitration based on whether there was an agency relationship among the defendants, two of whom did not sign the arbitration agreement in dispute. 2008 WL 2439658, *3 ("Such a relationship would render Plaintiff's claims against BC and MBA subject to arbitration under Plaintiff's contract with NID.").

Plaintiff acknowledges the agency exception to the general rule, but argues that defendants have not established themselves as Kaiser's agent in obtaining payment for plaintiff's medical care. The order now considers this argument as to each defendant.

### A. Healthcare Recoveries and Healthcare Recoveries, Inc.

The complaint alleges that defendants Healthcare Recoveries and Healthcare Recoveries, Inc. are the same entity (Compl. ¶ 2). Defendants do not dispute this allegation. As such, this order will treat these defendants as one and the same in this discussion.

Defendants present two documents as evidence that Healthcare Recoveries is Kaiser's agent. *First*, defendants offer their Statement of Work with Kaiser (Abad Reply Decl. Exh. A). The statement acknowledges Healthcare Recoveries as "an agent of [Kaiser], as reasonably required for [Healthcare Recoveries] to obtain information and assert the Claims on behalf of [Kaiser]" (*id.* at 17). The statement also includes detailed provisions as to the scope of services that Healthcare Recoveries would provide to Kaiser, as well as Healthcare Recoveries' various obligations to Kaiser under the statement (*id.* at 2, 15). The statement further contains a termination provision by which Kaiser can end its contractual relationship with Healthcare Recoveries (*id.* at 23). Both Healthcare Recoveries and Kaiser signed this statement, reflecting the consent and control indicative of Healthcare Recoveries being Kaiser's agent.

*Second*, defendants point to Kaiser's June 26 letter, which states that Kaiser "has obtained the services of Healthcare Recoveries . . . to act as our agent regarding our other party liability recovery rights concerning [plaintiff]" (Abad Decl. Exh. D). Of note, there is no

7

United States District Court
For the Northern District of California

indication of who received this letter, which was issued nearly two months after plaintiff's complaint (*ibid*). Given the highly contested nature of this motion at this stage in litigation, the order assigns minimum probative value to the letter, even if Kaiser may ratify Healthcare Recoveries as its agent under California Civil Code Section 2307.

The order finds that Healthcare Recoveries and Healthcare Recoveries, Inc. had a preexisting agency relationship with Kaiser, a signatory to the arbitration provision, such that Healthcare Recoveries may compel plaintiff to arbitrate his claim.

### B.    Trover Solutions, Inc.

When charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer those claims against the parent to arbitration. *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1208 (N.D. Cal. 2003) (Judge Jeremy Fogel) (internal quotation marks omitted). This is true even if the parent is not formally a party to the arbitration agreement. *Ibid.* As the parent company of Healthcare Recoveries, Trover Solutions, Inc. may compel arbitration of plaintiff's claim.

### CONCLUSION

For the reasons stated, defendants' motion to compel arbitration is **GRANTED**. The parties are **ORDERED** to proceed immediately to arbitration of this action. The plaintiff's claim in advance of arbitration is **STAYED**.

Defendants agree that they are bound to arbitrate individual disputes similar to the one in question here, even if the shoe were on the other foot (i.e., it was plaintiff who sought arbitration). If it turns out that the arbitration is merely used by one side for delay, the other side may ask to lift the stay and this litigation shall then proceed.

**IT IS SO ORDERED.**

Dated: August 23, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8